UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANN CARTER, MATTIE CROSSON and
CLINTON CARTER,

       Plaintiffs,

      -against-

ATLANTIC GREYHOUND LINES OF VA,
INC., JUAN ANTONIO CONCEPCION and
ROSEMARY SEVERINO,

       Defendants.
--------------------------------------------------------X

<u>REPORT AND
RECOMMENDATION</u>
CV-02-0393 (DGT) (JMA)

A P P E A R A N C E S:

Paul R. Cordella, Esq.
Rubenstein & Rynecki
16 Court Street, Suite 1717
Brooklyn, NY 11241
Attorney for Plaintiffs

Gene Stith, Esq.
Molod, Spitz, & DeSantis, P.C.
104 West 40th Street, 9th Floor
New York, NY 10018
Attorney for Defendants Atlantic Greyhound Lines of VA, Inc. and
Juan Antonio Concepcion

Lynne B. Prommersberger, Esq.
Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger
333 Earle Ovington Boulevard, 5th Floor
Uniondale, NY 11553
Attorney for Defendant Rosemary Severino

AZRACK, United States Magistrate Judge:

      By Order of February 11, 2005, the above captioned action was referred to me by the

Honorable David G. Trager for a report and recommendation on defendant Rosemary Severino's

December 23, 2004 motion for summary judgment. Because I find that plaintiffs have raised issues of fact as to whether they sustained serious injuries, and because I find that issues of fact exist about liability, I respectfully recommend that the motion for summary judgment be denied.

## I. BACKGROUND

Plaintiffs and defendants were involved in an accident on July 16, 2001, in Manhattan. Defendant Juan Antonio Concepcion was driving a bus owned by defendant Atlantic Greyhound Lines of VA, Inc. ("Greyhound") when the bus was in an accident with a car driven by defendant Severino. Plaintiffs were passengers[1] on the bus. Plaintiffs sued, and defendant Severino brought this motion for summary judgment, alleging i) that there is no evidence that Severino is liable for the accident; and ii) that plaintiffs had not sustained serious injuries under the "No-Fault Law," N.Y. Insurance Law § 5102(d) (McKinney 2005). Defendants Greyhound and Concepcion join Severino's motion with respect to whether plaintiffs raised issues of fact about serious injuries, and oppose the motion with respect to Severino's liability for the accident. Plaintiffs oppose the motion and submit evidence of their injuries.

Severino and the bus were each heading south on 11th Avenue. At the corner of 11th Avenue and 40th Street, Severino was in the far left lane and the bus in the lane next to her. This portion of

---

[1] Plaintiff Clinton Carter is the husband of passenger Ann Carter and not a passenger himself. Clinton Carter's claim is for loss of services. His interests in this case are not reflected in this report and recommendation. I note, however, that Clinton Carter was absent at his scheduled deposition and Severino therefore asks that he be precluded from testifying at any trial in this case. I do not address this request in my report and recommendation.

11th Avenue (between 41st and 40th Streets) is four lanes wide, and both of the left-most lanes are permitted to turn onto 40th Street. Severino testified that the bus was slightly ahead of Severino as they waited for a green light. See Severino Deposition, Exhibit E to Severino's Motion for Summary Judgment ("Severino Dep.") at 17, 20. She testified that when the light turned green, she and the bus started to make their turns at about the same time. Id. at 17. Severino made a statement at the scene in which she described the incident as the bus beginning its turn first with her following. See Severino Statement, Exhibit K to Severino's Motion for Summary Judgment ("Severino Statement"). In the course of both Severino and the bus turning, the vehicles came into contact. Severino's car was struck on the right side near the front and the bus struck on its left side at about the bus' midpoint.

Severino says she was moving at approximately seven miles an hour when the contact with the bus occurred. See Severino Statement. Concepcion, the driver, said he watched the episode unfold and could not believe that Severino was trying to fit into a space he described as no more than three and half feet wide. See Concepcion Deposition Transcript, Exhibit F to Severino's Motion for Summary Judgment ("Concepcion Dep.") at 22, 24. Concepcion said that had he not been watching the event occur through his side-view mirror, he would not have even known it had occurred; to him, the impact was negligible. Id. at 25-6. A witness to the accident, Mary Schuller, testified that the bus and Severino touched almost immediately after Severino left her spot at the red light. See Affidavit of Mary Schuller, Exhibit L to Severino's Motion for Summary Judgment. Concepcion testified that he was never stopped at a red light at the corner of 40th Street and 11th Avenue. See Concepcion Dep. at 22. Rather, he was making his turn from 11th Avenue onto 40th Street, and saw the light at 41st Street and 11th Avenue turn green. Id. at 19-24. Concepcion testified that Severino was waiting at

that intersection for a green light, and that he watched her progress all the way down 11th Avenue between 41st and 40th Streets until she ultimately ran into him when the bus was approximately three-quarters of the way through its turn. Id. at 22, 25.

After the accident, Ann Carter exited the bus and informed Severino that if she sued Greyhound, Carter would act as her witness. There is some evidence that Carter was exchanging words with Concepcion, but that information in not material to this motion for summary judgment. The police arrived and did not note any injuries in their accident report. See Accident Report, Exhibit H to Severino's Motion for Summary Judgment. The bus continued on its journey to Baltimore.

When the bus arrived in Baltimore, Ann Carter and her mother, Marie Crosson, were escorted off the bus by Baltimore police. Crosson complained of chest pains, Carter complained of dizziness, and both plaintiffs were taken to a hospital in an ambulance.

Ann Carter was treated at the hospital in Baltimore. There she received x-rays and pain killers and was told to follow up with her doctor. Back in New York, Carter saw her personal physician, a Dr. Malik Aktar, and Dr. Paul Ackerman, an orthopedist. Carter was also treated by Dr. Richard Hurwitz, a chiropractor. Carter testified that she went to her chiropractor three times a week for two years beginning December 2001. See Carter Affidavit, Exhibit A to Plaintiffs Opposition to Severino's Motion for Summary Judgment ("Carter Injury Aff"). She stopped because her doctors told her the pain would never fully go away. Id. She testified that she continues to feel pain. Id

Plaintiffs submitted the affidavit of chiropractor Jonathan A. Spitz, associate of Dr. Hurwitz. See Spitz Affidavit, Exhibit B to Plaintiffs Opposition to Severino's Motion for Summary Judgment ("Spitz Aff-Carter"). Dr. Spitz reported on range of motion tests of Carter's cervical and lumbar spine

from December 19, 2001, March 13, July 22, and October 29, 2002, and lastly from February 18,

2005.  The full results are set out in the margin.[2]  A total of 54 range

_____

[2] Ann Carter range of motion test results are as follows:

December 19, 2001

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 40 degrees | 50 degrees | 20% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 80 degrees | 85 degrees | 6% |
| Right Rotation | 80 degrees | 85 degrees | 6% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 60 degrees | 90 degrees | 33% |
| Extension | 10 degrees | 30 degrees | 67% |
| Left Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Right Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Left Rotation | 20 degrees | 30 degrees | 33% |
| Right Rotation | 20 degrees | 30 degrees | 33% |

March 13, 2002

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 40 degrees | 50 degrees | 20% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 80 degrees | 85 degrees | 6% |
| Right Rotation | 80 degrees | 85 degrees | 6% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 70 degrees | 90 degrees | 22% |
| Extension | 20 degrees | 30 degrees | 33% |
| Left Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Right Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Left Rotation | 20 degrees | 30 degrees | 33% |
| Right Rotation | 20 degrees | 30 degrees | 33% |

## July 22, 2002

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 50 degrees | 50 degrees | 0 |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 80 degrees | 85 degrees | 6% |
| Right Rotation | 80 degrees | 85 degrees | 6% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 80 degrees | 90 degrees | 11% |
| Extension | 20 degrees | 30 degrees | 33% |
| Left Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Right Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Left Rotation | 30 degrees | 30 degrees | 0 |
| Right Rotation | 30 degrees | 30 degrees | 0 |

## October 29, 2002

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 80 degrees | 90 degrees | 11% |
| Extension | 20 degrees | 30 degrees | 33% |
| Left Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Right Lateral Flexion | 30 degrees | 35 degrees | 14% |
| Left Rotation | 30 degrees | 30 degrees | 0 |
| Right Rotation | 30 degrees | 30 degrees | 0 |

## February 18, 2005

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 35 degrees | 50 degrees | 30% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 35 degrees | 45 degrees | 22% |
| Right Lateral Flexion | 35 degrees | 45 degrees | 22% |
| Left Rotation | 60 degrees | 85 degrees | 29% |
| Right Rotation | 60 degrees | 85 degrees | 29% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 55 degrees | 90 degrees | 39% |
| Extension | 10 degrees | 30 degrees | 67% |
| Left Lateral Flexion | 15 degrees | 35 degrees | 57% |

of motion tests were conducted on the above testing dates, 24 of the cervical spine and 30 of the lumbar spine. 23 of the 54 tests showed that Carter's range of motion was limited by more than 20 percent of the normal range. Dr. Spitz's affidavit does not specify whether the tests were subjective or objective. See Spitz Aff-Carter. It does, however, point out that the restrictions were accompanied by dull pain. Id. Of the 23 tests that demonstrated a range of motion limited by 20 percent or more, 11 of those tests were performed on February 18, 2005, more than two years since Carter had stopped seeing her chiropractor. Dr. Spitz's affidavit also notes that MRIs of Carter's cervical and lumbar spine taken on December 21, 2001, show disc bulges. Dr. Spitz is of the opinion that Carter was injured as a result of the accident, and that the injuries caused a partial disability.

Carter stated that as a result of her injuries she was prevented from substantially performing all of the activities of her daily life for a significant period of time, and that she remains limited in her activities. Carter Injury Aff. at 2. She cannot lift heavy items and can no longer wear high heeled shoes without pain. Id. Carter maintains that she was unable to work for 30 days following her accident. After her return to work she had to take more frequent breaks and sit when necessary. Id. Employment records annexed to Severino's motion included an account only of military leave taken by Carter in the month following the accident. There is no reference to sick leave. See Carter's Employment Records, Exhibit M to Severino's Motion for Summary Judgment (identifying seven days

| | | | |
|---|---|---|---|
| Right Lateral Flexion | 15 degrees | 35 degrees | 57% |
| Left Rotation | 20 degrees | 30 degrees | 33% |
| Right Rotation | 20 degrees | 30 degrees | 33% |

of military leave between July 16, 2001 and August 16, 2001).[3]

Carter was examined by two of Severino's experts, Dr. Marshall J. Keilson, a neurologist, and Dr. Martin E. Wolpin, an orthopedist. Dr. Keilson noted that Carter's MRIs showed several disc bulges. See Keilson Examination of Carter, Exhibit S to Severino's Motion for Summary Judgment ("Keilson Exam-Carter"). Based on his review of Carter's medical records and his own examination, Dr. Keilson found no objective neurological signs that corresponded with Carter's complaints of pain. Id. Also based on a review of Carter's medical records and his own examination, Dr. Wolpin found no evidence of orthopedic or neurological abnormalities. See Wolpin Examination of Carter, Exhibit T to Severino's Motion for Summary Judgment ("Wolpin Exam-Carter").

Mattie Crosson was also treated at the hospital in Baltimore. There she received x-rays and, due to her complaints of chest pains, was admitted for five days while her heart was monitored.[4] Back in New York, Crosson saw her personal physician, a Dr. Sirvestava, and Dr. Malik Aktar. She was also treated by chiropractor Dr. Richard Hurwitz. Crosson testified that she went to her chiropractor three times a week for two years beginning December 2001. See Crosson Affidavit, Exhibit C to Plaintiffs Opposition to Severino's Motion for Summary Judgment ("Crosson Injury Aff"). She stopped because her doctors told her the pain would never fully go away. Id. She testified that she continues to feel pain. Id.

---

[3] Exhibit M reflects, in addition to the statement from Carter's employer of days of military leave, Carter's leave summary for fiscal year 2001-02. See Exhibit M. The fiscal year was September 2001 to August 2002. The accident took place in the preceding fiscal year, on July 16, 2001. The leave summary thus cannot corroborate or refute Carter's testimony that she could not work as a security officer for the 30 days following the accident.

[4] Crosson had undergone open-heart surgery two years prior to the incident.

Plaintiffs submitted an affidavit of Dr. Spitz regarding his and Dr. Hurwitz's treatment of

Crosson.  See Spitz Affidavit, Exhibit D to Plaintiffs Opposition to Severino's Motion for Summary

Judgment ("Spitz Aff-Crosson").  Dr. Spitz reported on range of motion tests of Crosson's cervical and

lumbar spine from December 19, 2001, March 13, 2002, March 19, 2003, and lastly from February

18, 2005.  The full results are set out in the margin.[5]  A

---

[5] Mattie Crosson range of motion test results are as follows:

### December 19, 2001

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
| --- | --- | --- | --- |
| Flexion | 40 degrees | 50 degrees | 20% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 70 degrees | 85 degrees | 18% |
| Right Rotation | 70 degrees | 85 degrees | 18% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
| --- | --- | --- | --- |
| Flexion | 40 degrees | 90 degrees | 56% |
| Extension | 10 degrees | 30 degrees | 67% |
| Left Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Right Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Left Rotation | 10 degrees | 30 degrees | 67% |
| Right Rotation | 10 degrees | 30 degrees | 67% |

### March 13, 2002

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
| --- | --- | --- | --- |
| Flexion | 40 degrees | 50 degrees | 20% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 80 degrees | 85 degrees | 6% |
| Right Rotation | 80 degrees | 85 degrees | 6% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
| --- | --- | --- | --- |
| Flexion | 50 degrees | 90 degrees | 44% |

9

| | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Extension | 30 degrees | 30 degrees | 0 |
| Left Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Right Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Left Rotation | 20 degrees | 30 degrees | 33% |
| Right Rotation | 20 degrees | 30 degrees | 33% |

### March 19, 2003

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 40 degrees | 50 degrees | 20% |
| Extension | 60 degrees | 70 degrees | 14% |
| Left Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Right Lateral Flexion | 40 degrees | 45 degrees | 11% |
| Left Rotation | 80 degrees | 85 degrees | 6% |
| Right Rotation | 80 degrees | 85 degrees | 6% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 40 degrees | 90 degrees | 56% |
| Extension | 20 degrees | 30 degrees | 33% |
| Left Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Right Lateral Flexion | 20 degrees | 35 degrees | 43% |
| Left Rotation | 20 degrees | 30 degrees | 33% |
| Right Rotation | 20 degrees | 30 degrees | 33% |

### February 18, 2005

| Cervical Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 30 degrees | 50 degrees | 40% |
| Extension | 50 degrees | 70 degrees | 29% |
| Left Lateral Flexion | 25 degrees | 45 degrees | 44% |
| Right Lateral Flexion | 25 degrees | 45 degrees | 44% |
| Left Rotation | 35 degrees | 85 degrees | 59% |
| Right Rotation | 35 degrees | 85 degrees | 59% |

| Lumbar Spine | Patient Results | Normal Range of Motion | Percentage Limitation |
|---|---|---|---|
| Flexion | 40 degrees | 90 degrees | 56% |
| Extension | 20 degrees | 30 degrees | 33% |
| Left Lateral Flexion | 25 degrees | 35 degrees | 29% |
| Right Lateral Flexion | 25 degrees | 35 degrees | 29% |
| Left Rotation | 15 degrees | 30 degrees | 50% |
| Right Rotation | 15 degrees | 30 degrees | 50% |

total of 48 range of motion tests were conducted on the above testing dates, 24 each of the cervical and lumbar spines. 32 of the 48 tests showed that Crosson's range of motion was limited by more than 20 percent of the normal range. As in his affidavit for Carter, Dr. Spitz's affidavit for Crosson does not specify whether the tests were subjective or objective, but points out that the restrictions were accompanied by dull pain. See Spitz Aff-Crosson. Of the 32 tests that demonstrated a range of motion limited by 20 percent or more, 12 of those tests were performed on February 18, 2005, more than two years since Crosson stopped seeing the chiropractor. Dr. Spitz's affidavit also notes that MRIs of Crosson's cervical and lumbar spine taken on December 21, 2001, show disc herniations. Dr. Spitz is of the opinion that Crosson was injured as a result of the accident, and that the injuries caused a partial disability.

Crosson, like Carter, stated that as a result of her injuries she was prevented from substantially performing all the activities of her daily life for a significant period of time and that she remains limited in her activities. See Crosson Injury Aff. at 2. Crosson cannot lift heavy items. Id.

Crosson was also examined by Severino's experts. Dr. Keilson noted that Crosson's MRIs showed multiple disc herniations. See Keilson Examination of Crosson, Exhibit U to Severino's Motion for Summary Judgment ("Keilson Exam-Crosson"). Dr. Wolpin found that restrictions on Crosson's ranges of motion were consistent with her age and that her complaints were subjective.[6] See Wolpin Examination of Crosson, Exhibit V to Severino's Motion for Summary Judgment ("Wolpin Exam-Crosson"). Dr. Wolpin did not review MRIs of Crosson's spine and thus did not opine on her

_____

[6] Crosson was 70 years old at the time of the incident.

11

herniated discs.  Id.

Severino moves for summary judgment, alleging that she is not liable for the accident and that plaintiffs did not raise any issues of fact as to whether they suffered serious injuries as required by the New York No-Fault Law.  Greyhound joins the motion inasmuch as it alleges that plaintiffs did not raise issues of fact as to whether they suffered serious injuries.  Greyhound opposes Severino's motion on liability and contends that the evidence presented raises issues of fact as to whether Severino is liable to for the accident.  Plaintiffs oppose Severino's motion, contending that they have raised issues of fact as to whether they suffered serious injuries, and have provided documentation of their injuries.  Plaintiffs further contend that the evidence thus far presented raises issues of fact as to whether Severino is liable for the accident.

## II.  DISCUSSION

Summary judgment may not be granted unless the moving party demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  Id. at 250.

A. Issues of Fact Exist about Liability

Jurisdiction in this case is based on diversity of citizenship; thus New York substantive law governs. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). In New York, a motion for summary judgment should be granted where "the facts clearly point to the negligence of one party without any fault or culpable conduct by the other party." Baker v. Staria, 6 A.D.3d 639, 775 N.Y.S.2d 182 (2d Dept. 2004). "[O]ne opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim . . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient." Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980). "Mere speculation that the defendant may have failed to take some unspecified measures to avoid the accident, or in some other way contributed to the occurrence of the accident, [is] insufficient to defeat [a] motion for summary judgment." Sirico v. Beukelaer, 787 N.Y.S.2d 662, 663 (N.Y. App. Div. 2d Dept. 2005).

In this case, the depositions of Severino and Concepcion are part of the summary judgment record. The record also includes Severino's statement at the scene of the accident and the affidavit of an eyewitness not connected to either of the parties. Severino remembers the start of the accident with both cars standing at the stop line at a red light at the intersection of 11th Avenue and 40th Street. Concepcion remembers the start of the accident as beginning as he rolled down 11th Avenue and began making a turn onto 40th Street without ever stopping at the intersection. Schuller, for her part, remembers the start of the accident in the same way as Severino; she was behind Severino and the bus at the intersection, waiting at a red light. Ann Carter, sitting on the left side of the bus, remembers the bus moving until "the crash." See Deposition of Ann Carter, Exhibit C to Motion for Summary

Judgment ("Carter Dep."), at 14. When there is a dispute about a central aspect of how the accident occurred, such as whether the bus was moving or not, issues of fact exist as to who is liable for the accident. See, e.g., Beattie v. Bolla Taxi, Inc., No. 01 Civ. 1270, 2002 U.S. Dist. LEXIS 17254, *5-*8 (S.D.N.Y. Sept. 12, 2002) (finding an issue of fact where parties could not agree whether traffic light was red or green); Salas v. United States, 94-CV-0062H, 1996 U.S. Dist. LEXIS 15918, *4-*5 (W.D.N.Y. Sept. 13, 1996) ("New York has been reluctant to grant summary judgment in automobile cases involving negligence. Summary judgment is seldom appropriate because even where the facts are undisputed, there is often a question as to whether a party acted reasonably under the circumstances. This can rarely be decided as a matter of law. Thus, New York courts have consistently held that summary judgment should be granted only in those cases where there is no doubt as to the absence of triable issues") (collecting cases)(citations omitted).

Counsel for Severino relies on the deposition of Severino and Schuller's statement. Counsel for Greyhound relies on the Concepcion deposition and Severino's statement at the scene. Severino complains that neither plaintiffs nor Greyhound have provided an accident reconstruction or other expert testimony to raise issues of fact as to her liability for the accident. Under New York law, however, they only need do so if Severino had relied on expert testimony in support of her summary judgment motion. See Bruno v. Toyotomi U.S.A., Inc., 203 F.R.D. 77, 78 (N.D.N.Y. 2001), citing Amatulli v. Delhi Constr. Corp., 77 N.Y.2d 525, 532-33 (1991). Severino did not bring expert testimony in her motion for summary judgment; plaintiffs and Greyhound do not need expert testimony to defeat the motion.

Differences in the details of the accident that emerge from the depositions of Severino and

Concepcion, and the statement of the witness Schuller, raise issues of fact as to who is liable for this

accident.  I therefore recommend that summary judgment on the issue of liability be denied.


B.  Issues of Fact Exist about Serious Injuries

New York's No-Fault Insurance Law requires a plaintiff to produce evidence that she has

suffered a serious injury.[7]  Objective proof of a plaintiff's injury is required to satisfy the serious injury

threshold and thereby defeat summary judgment; "subjective complaints alone are not enough."  Toure

v. Avis Rent A Car Systems, Inc., 98 N.Y.2d 345, 350 (2002) (citations omitted); see also Gaddy v.

Eyler, 79 N.Y.2d 955 (1992) (after defendant establishes a prima facie case that plaintiff's injuries are

not serious as defined by the statute, the burden shifts to the plaintiff to demonstrate a serious injury).

At issue in this case are injuries which constitute a "significant limitation of use of a body function or

system" or "a medically determined injury or impairment of a non-permanent nature" which endured for

90 of the 180 days following the accident and substantially limited the performance of daily activities.

No-Fault Law § 5102(d).

---

[7] Insurance Law § 5102(d) defines the term "serious injury" as:

a personal injury which results in death; dismemberment; significant disfigurement; a
fracture; loss of a fetus; permanent loss of use of a body organ, member, function or
system; permanent consequential limitation of use of a body organ or member;
significant limitation of use of a body function or system; or a medically determined
injury or impairment of a non-permanent nature which prevents the injured person from
performing substantially all of the material acts which constitute such person's usual and
customary daily activities for not less than ninety days during the one hundred eighty
days immediately following the occurrence of the injury or impairment.

1. <u>Significant Limitation of use of a Body Function or System</u>

> In order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. An expert's qualitative assessment of a plaintiff's condition may also suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system.

<u>Toure</u>, 98 N.Y.2d at 350-51. An affidavit from a plaintiff's treating chiropractor "specifying the decreased range of motion in his . . . spine as evidenced by objective findings [along with evidence of herniated discs confirmed by MRIs]" is "sufficient to raise a triable issue of fact." <u>Clervoix v. Edwards</u>, 781 N.Y.S.2d 690 (N.Y. App. Div. 2d Dept. 2004); <u>see</u> <u>also</u> <u>Gjelaj v. Ludde</u>, 281 A.D.2d 211, 211-12, 721 N.Y.S.2d 643, 644 (1 Dept. 2001) (finding chiropractor's affidavit which did not specify the degree of the limitation insufficient to raise an issue of fact). A survey of the cases shows that, where physicians or chiropractors conduct their own tests, courts have "generally found that a limitation of twenty percent or more is significant for summary judgment purposes." <u>Hodder v. United States</u>, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (Pollak, M.J.) (collecting New York cases).

Severino has met her burden of showing no serious injuries with the affidavits of her experts. Dr. Keilson concluded that Carter's MRIs revealed disc bulges but saw no objective signs of injuries. Dr. Wolpin also found no objective evidence that Carter had any abnormalities. As for Crosson, Dr. Keilson found evidence of herniated discs but considered those herniated discs consistent with Crosson's age. And Dr. Wolpin found no objective evidence of injuries to Crosson. Severino does not, however, dispute plaintiffs' recitation of what constitute normal ranges of motion.

While Severino's expert identified a bulging disc in Carter's spine and herniated discs in

Crosson's spine, "[i]t is well settled that proof of a herniated or bulging disc, by itself, is insufficient to establish a serious injury." Durham v. New York East Travel, Inc., 2 A.D.3d 1113, 1114, 769 N.Y.S.2d 324, 325 (3d Dept. 2003). Thus, the "burden then shift[s] to plaintiff[s] to come forward with sufficient evidence to overcome defendant's motion by demonstrating that [they] sustained [] serious injur[ies] within the meaning of the No-Fault Insurance Law." Gaddy, 79 N.Y.2d at 955.

Dr. Spitz utilized and relied on tests of plaintiffs' ranges of motion in their spines. The results of the almost half of the range of motion tests for Carter and two-thirds of the range of motion tests for Crosson show limitations of 20 percent or more. These results support a finding of serious injury for summary judgment purposes under the "significant limitation of use of a body function or system" section of the No-Fault Law. See Toure, 98 N.Y.2d at 353 ("For th[is] statutory categor[y], we have held that 'whether a limitation of use or function is 'significant' or 'consequential' (i.e., important . . . ) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part'"). The conclusion that plaintiffs have raised issues of fact as to serious injuries is bolstered by the findings of defendant's own expert, who identified a bulging disc in Carter's spine and multiple herniated discs in Crosson's spine. Thus, to the extent that Dr. Spitz tested plaintiffs' ranges of motion, and relied on the results of those tests in concluding that plaintiffs had sustained serious injuries, it appears plaintiffs have raised triable issues of fact. Some New York courts have said that range of motion tests based on a patient's expressions of pain are insufficient to raise an issue of fact. See Mastrantuono v. United States, 163 F. Supp. 2d 244, 255 (S.D.N.Y. 2001); Gillick v. Knightes, 279 A.D.2d 752, 719 N.Y.S.2d 335 (3d Dept. 2001) (no issue of fact on serious injury where the evidence presented is

range of motion tests which rely on pain and x-rays and MRIs showing no injuries). The court in

Mastrantuono distinguished such tests from objective range of motion tests, and offered as an example

of an objective range of motion test "leg raising tests conducted by the treating physician[.]" Id.

(recognizing that New York courts "have noted the importance of passive range of motion tests, which

are based on more objective criteria").

       Other cases find serious injuries where subjective range of motion tests, i.e., range of motion

tests based on a patient's expression of pain, are accompanied by other medical evidence, like MRIs

which show disc herniations and bulges. See, e.g., Durham v. New York East Travel, Inc., 2 A.D.3d

at 1115, 769 N.Y.S.2d at 325-26 ("While we have repeatedly held that a finding of reduced range of

motion alone is insufficient to support a finding of serious injury because such a determination is based

on subjective complaints of pain, the cases which so held were devoid of any independent objective

medical evidence of a serious injury"). Still other cases are ambiguous as to what evidence was

provided to establish issues of fact. See, e.g., Seda v. Khabrane, No. 5495, 2005 N.Y. App. Div.

LEXIS 2087, *1 (N.Y. App. Div. 1 Dept. Mar. 1, 2005) (stating only that "[a]n issue of fact [on

whether plaintiff sustained a serious injury] was raised by the affirmations and reports of plaintiffs'

doctors and the MRI, showing the injured plaintiff had sustained a herniated disc and several bulging

discs, and was experiencing significant limitations in the range of motion of her [] spine"); Terbaci v.

Griffin, 789 N.Y.S.2d 425 (N.Y. App. Div. 1 Dept. 2005) (stating only that "[t]he record supports the

court's finding that plaintiff did not sustain a serious injury within the meaning of the statute").[8]

---

[8] Ambiguity in the cases is not surprising, given the "perennial debate over the issue of whether
a plaintiff's evidence of personal injury meets the statutory threshold set by [the No-Fault Law], an

There is no evidence in the record of which type of range of motion tests were performed by Dr. Spitz and his associates; the results, however, state that the tests were accompanied by "dull" pain. This is some indication that the range of motion tests were not more objective leg raises or performed using any mechanical devices to ensure objectivity. Severino's motion and reply do not complain that the tests were not objective. Severino only argues that any measurable limitation is not a significant limitation as contemplated by the No-Fault Law. See Bent v. Jackson, 788 N.Y.S.2d 56, 58 (N.Y. App. Div. 1 Dept. 2005) (recognizing that a measurable diminution in range of motion is not the standard). In Bent v. Jackson, however, the plaintiff's expert had not provided degrees of normal ranges of motion, so the court could not ascertain the percentage of restriction on the plaintiff's movements. Id. at 59. In this case, normal ranges of motion were provided and were compared to plaintiffs' results to see if significant limitations as contemplated by the No-Fault Law were established. Because over half of the tests of Carter's spine and two-thirds of the tests of Crosson's spine showed limitations of 20 percent or more, significant limitation is established. And since I conclude that under the case law, range of motion tests combined with recognition of injuries in MRIs is enough evidence to raise triable issues of fact, I recommend that summary judgment be denied as to the significant limitation injury category.[9]

_____

'elusive standard that all too frequently escapes facile and final resolution.'" Bent v. Jackson, 788 N.Y.S.2d 56, 57 (N.Y. App. Div. 1 Dept. 2005) (citation omitted).

[9] Severino also complains of the gap in treatment of both plaintiffs. See Bent v. Jackson, 788 N.Y.S.2d at 58 (relying on an unexplained gap in treatment as contributing factor in court's decision to uphold grant of summary judgment); Casella v. New York City Transit Auth., 787 N.Y.S.2d 883, 883-4 (N.Y. App. Div. 2005) (plaintiff could not carry her burden without a satisfactory explanation for three-year gap). Under New York law plaintiffs have to return to their physicians or chiropractors for an examination in order to meet a defendant's summary judgment motion. Bent v. Jackson, 788

2. <u>Medically Determined Injury or Impairment Lasting 90 Days</u>

Plaintiffs claim they were substantially impaired for 90 of 180 days following the accident, and point to the affidavits of Carter and Crosson as evidence. Severino contends that the affidavits are insufficient to raise issues of fact as to serious injury under this category. I agree, and therefore recommend that Severino's motion for summary judgment on plaintiffs' claims under this section of the No-Fault Law be granted.

"In order to prove 'serious injury' under the 90-out-of-180 day rule, plaintiff must prove that she was 'curtailed from performing [her] usual activities to a great extent rather than some slight curtailment.'" <u>Gaddy</u>, 79 N.Y.2d at 955. Crosson's affidavit does not do so. Crosson provides no details of any inability to perform any of her usual activities. Carter's affidavit also does not raise any issues of fact under this section of the No-Fault Law. Carter says she could not work as a security officer for one month, but apparently could perform activities for the military. Not being able to lift heavy objects or wear high heeled shoes does not establish issues of fact as to serious injury in this category sufficient to rebut Severino's motion; some competent medical evidence of this must be

_____

N.Y.S.2d at 58 ("In order to raise a triable issue of fact, plaintiffs' claim that range of motion is limited must be sustained by objective medical findings that are 'based on a recent examination of the plaintiff'") (citation omitted). Thus, a plaintiff who returns to her physician or chiropractor for an examination during litigation, having stopped treatment because there were no further benefits to continuing, faces the strange result of exposure to summary judgment due to a gap in treatment.

The gap in treatment in this case runs from when plaintiffs stopped going to the chiropractor in 2002 or 2003 until they returned to him for an examination in February 2005. Plaintiffs' discontinuation of chiropractor visits is not an unexplained gap in treatment. Plaintiffs stated in their affidavits that they stopped going because their doctors told them that further treatment would not relieve their pain. I think this is an adequate explanation for why they stopped visiting the chiropractor.

presented.  See Casella v. New York City Transit Auth., 787 N.Y.S.2d 883, 884 (N.Y. App. Div.

2005).  I therefore recommend that Severino's motion for summary judgment on the claims under the

90-out-of-180 day rule be granted.


## III.  CONCLUSION

I conclude that issues of fact exist as to liability for the accident.  I further conclude that plaintiffs

have met their burden of raising issues of fact as to whether they sustained serious injuries under the

"significant limitation of use of a body function or system" injury category, but that they have not raised

issues of fact under the impairment for 90-out-of-180 days category.  I therefore recommend that the

motion for summary judgment be DENIED as to liability and as to serious injury under the significant

limitation category, and GRANTED as to serious injury under the impairment for 90-out-of-180 days

category.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court,

with a copy to the undersigned, within ten (10) days of receipt of this Report.  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. §

636(b)(1)(A); Fed. R. Civ. P. 72, 6(a), 6(e).

SO ORDERED.

Dated:  Brooklyn, New York
        March 17, 2005


_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE